# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| YAKITORI BOY, INC., et al. v. STARR INDEMNITY & LIABILITY COMPANY | CIVIL ACTION NO. 18-4094 |
|---|---|

## MEMORANDUM RE: MOTION FOR JUDGMENT ON THE PLEADINGS

**Baylson, J.** June 28, 2019

## I. Introduction

In this declaratory judgment action, Plaintiff Yakitori Boy, Inc. seeks a declaration regarding the limits of coverage required by an insurance policy it has with Defendant Starr Indemnity & Liability Company. This matter is related to an ongoing personal injury action in Pennsylvania state court, where Yakitori Boy is named as a defendant and Starr is tasked with defending and indemnifying Yakitori Boy under the insurance policy at issue here. Starr removed the declaratory judgment action to this Court and now moves for Judgment on the Pleadings.

For the reasons that follow, Starr's Motion for Judgment on the Pleadings is DENIED.

## II. Factual History

The events that give rise to this declaratory judgment action are the subject of a second amended complaint, (ECF 7-1 at Ex. B., the "Underlying Complaint"), filed by Sierra in the Philadelphia Court of Common Pleas, No. 2900 (the "Underlying Action"). The Underlying Complaint alleges that Sierra was walking with a group of individuals in Philadelphia when, "suddenly and without warning," Gordon and Schmid struck Sierra in the head, causing him to fall to the ground. (Underlying Complaint at ¶¶ 9–10). When Sierra attempted to stand up, the underlying complaint alleges that Gordon and Schmid "again punched and/or kicked [him] about

1

his face and head, causing [him] to lose consciousness." (Id.). Sierra allegedly suffered various physical injuries and incurred medical expenses from of the incident. (Id. ¶¶ 16–17).

The Underlying Complaint asserts two causes of action against Gordon and Schmid for assault and battery and negligence. It also asserts a cause of action against Yakitori Boy for negligently overserving alcohol to Gordon and Schmid prior to the attack. (Id. at ¶ 32).[1] Sierra claims that his injuries "were a proximate and foreseeable result of [Yakitori Boy's] act of supplying . . . alcoholic beverages to visibly intoxicated patrons." (Id. ¶ 31).[2] Yakitori Boy's alleged negligence consisted of:

(a) Continuously and repeatedly serving alcoholic beverages to its patrons, including the patrons who assaulted and battered the Plaintiff, despite the knowledge that said patrons were intoxicated;
(b) Negligence per se as being in violation of 47 Pa. C.S. 4-493(a) unlawful acts relative to liquor, malt and beverages and licenses;
(c) Failing to have a responsible management alcohol program *[sic]* "RAMP" to prevent the service of alcohol to visibly intoxicated patrons in violation of 47 Pa. C.S. 4-493; and
(d) Failing to hire proper and qualified bartenders, as well as, have proper and/or sufficient bartender training to prevent the service of alcohol to visibly intoxicated patrons in violation of 47 Pa. C.S. 4-493.

(Id. ¶ 33).

Since Sierra filed the Underlying Complaint, Starr has defended Yakitori Boy under the terms of a liquor liability insurance policy (the "General Policy"). (ECF 25, "Am. Compl. for Decl. Judgment," at ¶ 31). The General Policy requires Starr to provide coverage for "those sums that the insured becomes legally obligated to pay as damages because of 'injury' to which [the] insurance applies if liability for such 'injury' is imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage." (Id. ¶ 35). The insurance limits for liquor

---

[1] The Court notes that the numbering of paragraphs in Count III of the Underlying Complaint is inconsistent. This citation refers to the first paragraph numbered "32."
[2] This citation refers to the second paragraph numbered "31."

liability coverage are $1 million in the aggregate and $1 million for each common cause. (Id. ¶ 36).

The General Policy's coverage is modified by an Assault and Battery Exclusion (the "Exclusion") and an Assault and Battery Endorsement (the "Endorsement"). (See ECF 7-3). The Exclusion provides that:

> This insurance does not apply to:
>
> **Assault and Battery**
>
> (1) "Bodily injury", "property damage", "injury" or "personal and advertising injury" arising from the following:
>  (a) "assault and battery" or any act or omission in connection with the prevention or suppression of such acts; or
>  (b) harmful or offensive contact between or among two or more persons . . .
> (2) This exclusion applies regardless of the degree of capability or intent and without regard to:
>  (a) whether the acts are alleged to be by or at the instruction or at the direction of the insured, his officers, "employees", agents or servants; or by any other person lawfully or otherwise on, at or near the premises owned or occupied by the insured; or by any other person;
>  (b) the alleged failure of the insured or his officers, "employees", agents or servants in the hiring, supervision, retention or control of any person, whether or not an officer, "employee", agent or servant of the insured;
>  (c) the alleged failure of the insured or his officers, "employees", agents or servants to attempt to prevent, bar or halt any such conduct.

(ECF 7-3 at the "Exclusion," at ¶ A.2). The Endorsement provides that:

> A. The following is added to . . . the Liquor Liability Coverage Form of **Section 1 – Liquor Liability Coverage** . . .
>
> We will pay those sums that the insured becomes legally obligated to pay as damages for "bodily injury," "property damage", or "personal and advertising injury" arising from "Assault and/or Battery."

> This endorsement applies regardless of the degree of culpability or intent and without regard to:
>
> (1) whether the acts are alleged to be by or at the instruction or at the direction of the insured, his officers, "employees", agents or servants; or by any other person lawfully or otherwise on, at or near the premises owned or occupied by the insured; or by any other person;
>
> (2) the alleged failure of the insured or his officers, "employees", agents or servants in the hiring, supervision, retention or control of any person, whether or not an officer, "employee", agent or servant of the insured.

(ECF 7-3 at the "Endorsement," at ¶ A). The Endorsement limits the amount of insurance available for claims that fall under its terms to $100,000 for each occurrence and $100,000 in the aggregate. (Endorsement at "Schedule"). The Exclusion defines "Assault and Battery" as follows:

> **a.** Actual or threatened assault or battery whether caused by or at the instigation or direction of any insured, his "employees", patrons or any other persons; or
> **b.** The failure of an insured or anyone else for whom [an/any] insured is legally responsible to prevent or suppress assault; or
> **c.** Battery; or
> **d.** The negligent:
> **(1)** employment;
> **(2)** investigation;
> **(3)** supervision;
> **(4)** training;
> **(5)** retention
> of a person for whom any insured is or ever was legally responsible and whose conduct is described in **a.**, **b.**, **c.** and **d.** above.
> **e.** The alleged failure of the insured or his officers, "employees", agents or servants to attempt to prevent, bar or halt any such conduct.
> **f.** "Assault and Battery" includes, but is not limited to, sexual assault and battery.

(Exclusion ¶ C). The Endorsement provides a substantially similar definition of "Assault and/or Battery," except that it omits language about the alleged failure of an insured or its agents to "attempt to prevent, bar or halt" otherwise defined conduct. (See Endorsement ¶ E).

Although Starr agreed to defend Yakitori Boy in the Underlying Action, Starr alerted Yakitori Boy by letter dated August 14, 2018, that it would only provide coverage under the limits of liability in the Endorsement in the amount of $100,000 for each occurrence and $100,000 in the aggregate. (Am. Compl. for Decl. Judgment ¶ 32). Yakitori Boy then filed an action in the Philadelphia Court of Common Pleas seeking a declaration that Starr is obligated to defend and indemnify it in connection with the Underlying Action up to the $1 million limit provided for in the General Policy.

### III. Procedural History

Starr removed the declaratory judgment action to this Court on September 24, 2018. (ECF 1). Starr then filed a Motion for Judgment on the Pleadings on October 19, 2018, (ECF 7, "Mot." or "Motion"), which is the subject of this Memorandum Opinion. Sierra and Yakitori Boy responded in opposition on January 28, 2019, (ECF 19, "Sierra Opp'n"; ECF 20, "Yakitori Boy Opp'n"), and Starr replied in support on February 11, 2019. (ECF 22, "Reply").

Amid rounds of briefing on the Motion, Sierra moved to remand the case to state court on October 24, 2018. (ECF 8). This Court denied Sierra's Motion to Remand on January 14, 2019, finding that Sierra is a nominal party to this action but nonetheless should have been aligned as a plaintiff with Yakitori Boy. (ECF 18). The Court then granted Yakitori Boy leave to file a First Amended Complaint for Declaratory Judgment, which added Gordon and Schmid as plaintiffs. (ECF 23; ECF 25, "Am. Compl. for Decl. Judgment"). The Amended Complaint, filed on March 26, 2019, remains the operative complaint before this Court. Starr filed an Answer on April 15, 2019. (ECF 30).

By letters to the Court, the parties agreed that the Motion for Judgment on the Pleadings was not mooted by the filing of the Amended Complaint for Declaratory Judgment, and that the

Motion encompasses the allegations in that pleading. The Court then gave Gordon and Schmid until May 23, 2019, to file any response to the Motion. (ECF 31). No further briefing was submitted, and the Motion is now ripe for review.[3]

## IV. Jurisdiction and Legal Standard

### A. Jurisdiction

Yakitori Boy instituted this action seeking a declaratory judgment under Pennsylvania's Declaratory Judgments Act, 42 Pa. C.S. § 7531 et seq. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1) because the parties are diverse and the amount in dispute exceeds $75,000. In an action for declaratory judgment where the sole basis for federal jurisdiction is diversity, a court must apply the substantive law of the state in which it sits. See Liberty Mut. Ins. Co. v. Sweeney, 216 F.2d 209, 210 (3d Cir. 1954). This Court will therefore apply Pennsylvania law as it applies to insurance coverage.

### B. Legal Standard

Federal Rule of Civil Procedure 12(c) provides that "after the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Judgment on the pleadings is appropriate only when the movant "clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." Rosenau v. Unifund Corp., 539 F.3d 218, 221 (3d Cir. 2008). "The standard for deciding a motion for judgment on the pleadings filed pursuant to Federal Rule of Civil Procedure 12(c) is not materially different from the standard for deciding a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6)." Zion v. Nassan, 283 F.R.D. 247, 254 (W.D. Pa. 2012). Either motion may

---

[3] The Court notes that the docket reflects two unsuccessful attempts to serve Gordon in this matter. (ECF 28, 32). As of the date of this Memorandum Opinion, it does not appear that Mr. Gordon has been served with the Amended Complaint for Declaratory Judgment.

be used to seek the dismissal of a complaint based on a plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6), (h)(2)(B). The only difference between the two motions is that a Rule 12(b) motion must be made before a "responsive pleading" is filed, whereas a Rule 12(c) motion can be made "[a]fter the pleadings are closed."

The United States Supreme Court has established a two-part test to determine whether to grant a motion to dismiss. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). First, the court must ascertain whether the complaint is supported by well-pleaded factual allegations. Iqbal, 556 U.S. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Twombly, 550 U.S. at 555. In turn, these factual allegations must be sufficient to provide a defendant the type of notice contemplated in Rule 8. See Fed. R. Civ. P. 8(a)(2) (requiring a short and plain statement of the claim showing the pleader is entitled to relief); see also Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).

Taking the well-pleaded facts as true, the court must then determine whether the plaintiff is "plausibly" entitled to relief. Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009). That is, the pleadings must contain enough factual content to allow a court to make "a reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 679. In short, a complaint must not only allege entitlement to relief, but must also demonstrate such entitlement with sufficient facts to push the claim "across the line from conceivable to plausible." Id. at 683; accord Holmes v. Gates, 403 F. App'x 670, 673 (3d Cir. 2010).

To decide a motion for judgment on the pleadings, like a motion to dismiss, courts consider only the allegations contained in the complaint, exhibits attached to the complaint, matters of public record, and, where appropriate and necessary, "an undisputedly authentic document that a

7

defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

**V.     Discussion**

As there are no disputes of material fact related to this Motion, the only issue the Court must consider is whether the Endorsement covers the claim against Yakitori Boy in the Underlying Complaint. "The interpretation of an insurance policy is a question of law." Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co., 908 A.2d 888, 897 (Pa. 2006) (citing 401 Fourth Street v. Investors Ins. Co., 879 A.2d 166, 170 (Pa. 2005)). Courts may therefore dispose of such cases on motions for judgment on the pleadings where the sole issue concerns the interpretation of the policy.

There are several well-recognized principles under Pennsylvania law that courts should utilize in interpreting the legal meaning of terms in an insurance policy. Those words in the policy that are of common usage should be "construed according to their natural, plain, and ordinary sense." Kvaerner, 908 A.2d at 897.

> Our purpose in interpreting insurance contracts is to ascertain the intent of the parties as manifested by the terms used in the written insurance policy. When the language of the policy is clear and unambiguous, we must give effect to that language. However, when a provision in the policy is ambiguous, the policy is to be construed in favor of the insured to further the contracts *[sic]* prime purpose of indemnification and against the insurer, as the insurer drafts the policy and controls coverage.

Donegal Mut. Ins. Co. v. Baumhammers, 938 A.2d 286, 290 (Pa. 2007) (internal citations and quotation marks omitted).

For purposes of interpreting the terms of insurance policies for a duty to defend or indemnify, the duty to defend is broader than the duty to indemnify. See USAA Cas. Ins. Co. v.

8

Bateman, Civ. A. No. 07-3700, 1008 WL 4761718, at *4 (E.D. Pa. Oct. 30, 2008) (Baylson, J.). Where an underlying complaint makes at least one allegation that falls within the scope of the policy's coverage, the duty to defend is triggered, even where an insured is ultimately found to be not liable. See Gen. Accident Ins. Co. of Am. v. Allen, 692 A.2d 1089, 1095 (Pa. 1997) ("If the complaint against the insured avers facts that would support a recovery covered by the policy, then coverage is triggered and the insurer has a duty to defend until such time that the claim is confined to a recovery that the policy does not cover.").

In determining whether the underlying litigation falls within the scope of the insurer's duty to defend and indemnify, a court must examine only those factual allegations made within the "four corners" of the underlying complaint. The duty cannot be triggered by allegations outside of the complaint. See Kvaerner, 908 A.2d at 896 ("[A]n insurer's duty to defend and indemnify [must] be determined solely from the language of the complaint against the insured. . . . [A]n insurer's duty to defend is triggered, if at all, by the factual averments contained in the complaint itself."). Coverage is also not triggered by the skill of a plaintiff's pleadings. Rather, courts must look only at those factual allegations in the complaint, not the legal claims, in considering whether a suit falls within the scope of the duty. Mutual Ben. Ins. Co. v. Haver, 725 A.2d 743, 745 (Pa. 1999) ("[T]he particular cause of action that a complaint pleads is not determinative of whether coverage has been triggered. Instead it is necessary to look at the factual allegations contained in the complaint.").

Although Starr agreed to defend Yakitori Boy in the Underlying Action, Starr argues that Yakitori Boy is limited to $100,000 in coverage under the terms of the Exclusion and Endorsement. Starr contends that the factual allegations in the Underlying Complaint establish that Sierra's injuries "arose from" Gordon and Schmid's intentional assault and battery. (Mot. at 8). In

9

opposition, Sierra argues that the Endorsement "totally replaces" the Exclusion and the Exclusion thus has no bearing on this Court's analysis. (Sierra Opp'n at 7). Yakitori Boy and Sierra also both argue that neither the Exclusion nor the Endorsement encompasses the negligence claims asserted in the underlying complaint. (Yakitori Boy Opp'n at 13–14).

### A. The Court Must Consider Both the Exclusion and the Endorsement in Evaluating the Extent of Coverage

According to Starr's Motion, the Exclusion acts to limit the General Policy by providing that insurance coverage does not apply to injuries "arising from" assault and battery. Starr further explains that the Endorsement then modifies the Exclusion by adding limited coverage—not the $1 million limit of the General Policy as a whole, but rather a $100,000 sublimit—for such assault-and-battery related injuries. Sierra argues in opposition that only the Exclusion contains language that it applies to assault-and-battery claims "regardless of the degree of culpability or intent." (Sierra Opp'n at 10). Sierra contends that because the Endorsement does not contain similar culpability language, "neither the Endorsement, nor the Exclusion in the General Policy, which is clearly modified and replaced by the Endorsement, applies 'regardless of culpability or intent.'" (Id. at 10). Citing the "reasonable expectations of the insured," Sierra explains that the Endorsement must be limited to intentional conduct only. (Id. at 11). Thus, Sierra argues that his negligence claims are subject only to the General Policy and it's $1 million coverage limit.

"[A]n insurance policy must be read as a whole and construed according to the plain meaning of its terms." C.H. Heist Caribe Corp. v. Am. Home Assurance Co., 640 F.2d 479 (3d Cir. 1981). "The proper focus regarding issues of coverage under insurance contracts is the reasonable expectations of the insured." Britamco Underwriters v. Weiner, 636 A.2d 649, 651 (Pa. Super. 1994). "[A] significant indicator of the parties' intent—and the insured's expectations—[is] the fact that the insured paid an added premium for the coverage [in an

10

Endorsement]." Bishops, Inc. v. Penn Nat'l Ins., 984 A.2d 982, 992 (Pa. Super. 2009). Thus, "when a specific form of insurance is provided by an endorsement tailored to meet the particular needs of the insured and the company, that language must be followed to carry out the intentions of the parties." St. Paul Fire & Marine Inc. Co. v. United States Fire Ins. Co., 655 F.2d 521, 524 (3d Cir. 1981).

First, and contrary to Sierra's argument, the Endorsement does expressly apply to injuries arising from assault and battery "regardless of degree of culpability of intent." (Endorsement ¶ A). The Exclusion precludes coverage for claims arising from "'assault and battery' or any act or omission in connection with the prevention or suppression of such acts" or "harmful or offensive contact between or among two or more persons." (Exclusion ¶ A.2(1)). It "applies regardless of the degree of culpability or intent." (Id. ¶ A.2(2)). The Endorsement extends coverage to claims arising from "Assault and/or Battery" and also "applies regardless of the degree of culpability or intent." (Endorsement ¶ A). Therefore, the language included in the Exclusion, but missing from the Endorsement, involves coverage, or the lack thereof, for claims arising from "harmful or offensive contact."

This distinction between the Exclusion and the Endorsement is discussed further below, but the Court is not persuaded that the omission of the "harmful or offensive contact" language evidences an intent on Yakitori Boy's part that the Endorsement vitiate the existence of the Exclusion so that the $1 million General Policy limit should apply to Sierra's claims. The Court further finds that the reasonable expectation doctrine is of limited value here, where Sierra is not the insured and cannot speak to Yakitori Boy's expectations and where the Pennsylvania Supreme Court has only applied the doctrine when noncommercial insureds allege misrepresentation on the part of the insurer. See Madison Constr. Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100, 109 n.8

(Pa. 1999); see also Nautilus Ins. Co. v. Bike & Build, Inc., 340 F. Supp. 3d 399, 416 (E.D. Pa. 2018) (Sánchez, J.) (noting that "[t]he Pennsylvania Supreme Court has applied the reasonable expectations doctrine in very limited circumstances," and explaining that the "plain and unambiguous terms of a policy demonstrate the parties' intent" absent allegations of misrepresentation on the part of the insurer (internal citations and quotation marks omitted)). Such is not the case here.

The Court will therefore consider both the Exclusion and the Endorsement in evaluating Starr's liability for coverage of Sierra's claims.

### B. Sierra's Negligence Claims Are Not Encompassed by the Endorsement

Starr argues in its Motion that Sierra's negligence claims fall within the coverage limits of the Exclusion and the Endorsement because: (1) the use of the phrase "arising from . . . 'assault and battery'" encompasses all claims—including negligence claims—causally connected with an assault and battery; (2) Yakitori Boy's alleged negligence was not a direct and proximate cause of Sierra's injuries; and (3) despite the assertion of a negligence claim against Gordon and Schmid, the underlying complaint contains no factual allegations of negligent conduct. In opposition, both Sierra and Yakitori Boy argue that the underlying complaint sufficiently alleges independent negligence claims against Yakitori Boy, Gordon, and Schmid, and that those claims fall outside the coverage provided by the Exclusion and the Endorsement.

Where an insurance policy addresses coverage arising out of an assault or battery, "[t]he term 'arising out of' is interpreted in terms of 'but for' causation." Alea London Ltd. v. Woodlake Management, 365 F. App'x 427, 429 (3d Cir. 2010) (citing Madison Constr. Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100, 106 (Pa. 1999)). "[An] assault and battery exclusion"—or in this case, endorsement—"will apply to allegations that the insured's negligence contributed to the

injures." Id. (citing Acceptance Ins. Co. v. Seybert, 757 A.2d 380, 383 (Pa. Super. 2000)). "The insurer only owes a duty to defend if the complaint alleges the insured's negligence itself directly led to the injuries." Id. (citing QBE Ins. Corp. v. M & S Landis Corp., 915 A.2d 1222, 1229 (Pa. Super. 2007) ("Landis").

The question this Court must decide, then, is whether the Underlying Complaint alleges that Yakitori Boy's negligence merely contributed to or directly caused Sierra's injuries. As explained above, Yakitori Boy's alleged negligence consisted of: (a) continuously serving alcohol to patrons, including Gordon and Schmid, despite knowing those patrons were intoxicated; (b) violating 47 Pa. C.S. 4-493(a), constituting negligence per se; (c) failing to implement a program to guard against alcohol service to intoxicated persons; and (d) failing to train or otherwise hire qualified bartenders to prevent alcohol service to intoxicated persons. (Underlying Complaint ¶ 33). The Underlying Complaint alleges that Sierra's injuries "were a proximate and foreseeable result of [Yakitori Boy's] act of supplying . . . alcoholic beverages to visibly intoxicated patrons." (Id. ¶ 31).[4]

Starr contends that this case presents a factual scenario similar to Seybert, 757 A.2d 380, where the Superior Court of Pennsylvania found that an injured plaintiff's negligence claim against a bar for overserving alcohol to the patrons who later assaulted him did not fall outside an assault-and-battery exclusion in the bar's insurance policy. The Superior Court explained that the complaint failed to allege sufficient facts that the bar's actions in overserving the patrons were a proximate cause of plaintiff's injuries independent of those patrons' subsequent assault and battery. Id. at 383.

---

[4]  This citation refers to the second paragraph numbered "31" in the Underlying Complaint.

By contrast, Sierra largely relies on Landis, 915 A.2d 1222, where the defendant nightclub had an insurance policy containing an exclusion for claims that arose out of assault and battery.[5] The plaintiff, a decedent's estate, alleged that the nightclub's negligence was a proximate cause of the decedent's death, and the Superior Court of Pennsylvania agreed because the complaint alleged that decedent was smothered to death as a result of the negligence of the club's bouncers while evicting him. The complaint also alleged that the nightclub itself was negligent by failing to adequately train and supervise its employees, failing to adequately staff the premises, and failing to timely render first aid. Id. at 1228–29. Likewise, in Essex Ins. Co. v. Starlight Mgmt. Co., 198 F. App'x 179 (3d Cir. 2006), the Third Circuit found that a negligence claim fell outside of an assault-and-battery exclusion in defendant strip club's insurance policy because it was premised on allegations that the club's employees mistakenly believed the plaintiff was disorderly and failed to use due care in ejecting him from the club. Id. at 181. The complaint also alleged that the club failed to properly hire and train its employees. Id.

Yakitori Boy's brief relies entirely on Nautilus Ins. Co. v. Shawn Owens, Inc., 316 F. Supp. 3d 873 (E.D. Pa. 2018) (McHugh, J.), where a decedent's estate sued a bar for negligence after its employees directed a patron to confront the decedent for stealing a bottle of alcohol, and the patron proceeded to stab and kill him. Judge McHugh found that an assault-and-battery exclusion in the bar's insurance policy applied to bar coverage over the estate's claims. Id. at 878. Yakitori Boy distinguishes the policy language in that case from the Exclusion and Endorsement at play here, as if to argue that the Endorsement could only cover negligence-based claims if it contained the

---

[5] Sierra also cites portions of decisions that examine whether alleged negligence that precedes an intentional act can be considered an accident or "occurrence" under various insurance policies. Here, the Court is tasked with determining whether Sierra's claims against Yakitori Boy arise from assault and battery, not whether Yakitori Boy's alleged negligence constituted an accident or occurrence under the General Policy.

14

same language as the policy in Nautilus. The holding in Nautilus is not so broad, and Yakitori Boy's argument fails to take into account cases like Seybert, which found an assault-and-battery exclusion applicable to negligence-based claims despite different policy language.

In both Landis and Essex Ins. Co., the claimed injuries arose from the conduct of the insured's employees. It is conceivable that an insured's negligence in failing to properly hire or train its employees could be the proximate cause of those employees later injuring plaintiff. In Seybert, like in this case, the injury was caused by third-parties who simply patronized (and were allegedly overserved alcohol at) the insured's establishment prior to making contact with the injured plaintiff. The plaintiff in Seybert only asserted a claim for intentional assault and battery against those third-parties, and so the Superior Court held that because the injuries were undeniably caused by intentional conduct, the insured's alleged negligence could not have proximately caused the plaintiff's harm. Had Sierra merely asserted an assault-and-battery claim against Schmid and Gordon in the Underlying Complaint, this Court could apply Seybert and conclude the analysis.

However, Sierra's underlying complaint asserts alternative theories of relief—a claim that Schmid and Gordon behaved intentionally and a separate claim that they behaved negligently. Starr argues that Sierra included the latter negligence claim to make an "end-run around the Exclusion," and that the Underlying Complaint contains no factual allegations of negligent conduct. (Mot. at 13). But the Underlying Complaint does allege that Schmid and Gordon "consum[ed] excessive amounts of alcohol to an intoxicated state," (Underlying Complaint ¶ 29), that they "lo[st] control of their actions" and became "cognitively impaired," (Id. ¶ 28(f)-(g)), and that their "conduct was a result of . . . intoxication at the time of the incident." (Id. ¶ 15). These factual allegations are enough to state a plausible claim that Schmid and Gordon negligently caused Sierra's injuries. See Stidham v. Millvale Sportsman Club, 618 A.2d 945, 953 (Pa. Super.

15

1992) ("[I]mbibed intoxicants must be considered in determining if the actor has the ability to formulate an intent. . . . If the actor does not have the ability to formulate an intent, the resulting act cannot be intentional.").

Starr has not cited any case law to support the notion that Yakitori Boy's alleged conduct could not be considered a direct cause of Sierra's harm in this negligence context. Instead, Starr argues that even if the Underlying Complaint does allege a plausible negligence claim, that claim is nevertheless barred for coverage by the Exclusion. As discussed above, the Exclusion applies to claims arising from "harmful or offensive contact . . . . regardless of the degree of culpability or intent." (Exclusion ¶ A.2). The parties do not appear to dispute that the allegations in the complaint constitute "harmful or offensive contact." See Regis Ins. Co. v. All Am. Rathskeller, Inc., 976 A.2d 1157, 1163 (Pa. Super. 2009) ("In this case, although negligence claims were asserted against [the insured's] employees in the Underlying Lawsuit, these claims . . . nevertheless involve 'harmful or offensive contact . . .' and are therefore excluded from coverage."). Sierra responds that the Endorsement does not apply because it covers only "negligent: (1) employment; (2) investigation; (3) supervision; [and] (4) training." (See Endorsement ¶ E.e). Because Sierra asserts negligence under Pennsylvania's Dram Shop Act, 47 Pa. C.S. § 4-493(1), he argues that the Endorsement does not apply and his claims must fall within the General Policy's higher coverage limit.

These arguments are not mutually exclusive. Indeed, if the Exclusion does apply, and the Endorsement does not, then the General Policy wholly excludes coverage for Sierra's negligence-based claims. The inclusion of "harmful of offensive contact" in the Exclusion, but not the Endorsement, may support such an outcome. But neither party is advocating this, and it is unclear from the language of the General Policy and from the briefs submitted in relation to this Motion

16

that either Starr or Yakitori Boy intended such a reading when they negotiated the terms of the General Policy.

Nevertheless, none of the parties' arguments support a finding that the Endorsement applies to Sierra's negligence-based theory of recovery. The Court therefore cannot declare as a matter of law that the General Policy only requires Starr to provide coverage limits of $100,000 for Yakitori Boy's defense in the Underlying Action. Starr has a clear duty to defend the insured throughout the Underlying Action. Viewed in the context of Sierra's allegations, the provisions of the Exclusion and Endorsement present a unique set of potential conflicts, overlapping claims, and possibly ambiguous provisions.[6] In this situation, Starr is not entitled at this time to any definitive ruling about coverage in the event Yakitori Boy is found liable in the Underlying Action. This Court is inclined to put the matter in suspense status pending completion of the Underlying Action. If the Underlying Action proceeds to trial in state court, the parties should consider requesting jury interrogatories providing findings that will aid this Court in determining coverage. Even if there is a settlement, counsel can agree to make findings that will enable a final decision about coverage. Such an outcome is far preferable to this Court making advisory opinions about many hypotheticals to determine coverage. The Motion for Judgment on the Pleadings must be denied.

## VI. Conclusion

For the foregoing reasons, Defendant Starr Indemnity & Liability Company's Motion for Judgment on the Pleadings (ECF 7) is DENIED.

An appropriate Order follows.

O:\CIVIL 18\18-4094 Yakitori Boy v Starr Indemnity\18cv4094 Memo re Mot for Judgment on Pleadings

---

[6] The parties do not contend that the contractual terms are ambiguous and the Court does not make any decision about it here.